HODGES *et al. vs.* HIGHTOWER *et al.*

A man, as head of a family consisting of a wife and children, applied for a homestead. A *caveat* was filed, and while it was pending the land was sold at judicial sale, and the caveator and another, with full notice, bought it. Appraisers were appointed, and on their return the schedule was approved. The caveator appealed, and pending the appeal the applicant died:

*Held*, that a bill would lie at the instance of the widow and children to have them subrogated to the rights of the applicant, to enforce their right to the homestead, and to compel the purchasers to pay over the rents and profits arising from the land since the original grant of the homestead.

Equity. Homestead. Before Judge CRISP. Stewart Superior Court. April Term, 1881.

Reported in the decision.

R. L. WATTS; W. A. LITTLE, for plaintiffs in error.

T. D. HIGHTOWER; E. H. BEALL; J. L. WIMBERLY; GUERRY & SON, for defendants.

SPEER, Justice.

John L. Hodges, the husband of plaintiff in error, being the head of a family consisting of his wife and eight minor children, applied to the ordinary of Stewart county for setting apart a homestead in realty and personalty, on 5th July, 1875, including in his schedule a house and lot

in Lumpkin, Stewart county. C. J. Tucker, a creditor, filed a *caveat* thereto. In August, 1875, the house and lot were sold at sheriff's sale, and C. J. Tucker, the caveator, and T. D. Hightower, purchased it, with full notice of the application of Hodges. Appraisers were appointed under the *caveat*, and they made a return, valuing the property within the homestead limits, and the ordinary approved the schedule. The caveator appealed to the superior court. Pending the appeal, and before the same was heard, John L. Hodges, the applicant, died. This bill was filed by his wife and minor children, against the caveators, asking that, as the head of the family of the same minor children, she might be subrogated to the rights he had at the time of his death. It is further alleged that the caveator, Tucker, and Hightower, since said sheriff's sale, have received the rents and profits of the aforesaid house and lot and withheld the same from petitioner and her children, and still continue to hold the same, of the annual value of $100.00 for rent, to which complainants claim title. Her prayer is for an order of the court to make complainant and her children parties to the homestead application now pending; that a decree may be had to have the property surveyed as a homestead, and the personalty returned by the commissioners set apart as a homestead, for the sole use of complainant and her children; that the defendants may be decreed to pay rents and profits arising from the use of the property, as the proceeds of the homestead. To this bill defendants demurred, on the grounds,

(1.) There was no equity in the bill.

(2.) That complainant has a complete remedy at law.

The court below sustained the demurrer and dismissed the bill; whereupon complainant excepted.

The right to a homestead is a right created by the fundamental law and the statutes of the state.

Article VII, section I, of the constitution of 1868, under which complainant by her bill seeks to have decreed this homestead to be set apart, provides "each head of a family

or guardian, or trustee of a family of minor children, shall be entitled to a homestead of realty to the value of $2,000.00, and personal property to the value of $1,000.00, both to be valued at the time they are set apart." This court has by construction extended this right to a widow and minor children of a deceased husband, who are likewise entitled to this exemption out of the estate of the deceased husband and father. 40 *Ga.*, 439. Provision is made by law as to how and in what manner and to what court this application shall be made. Code, §2002, and sections following. The husband and father having applied, on his death the suit does not survive to his representative, for there is no provision made for his representative, either to institute the application originally or to be made a party in case of his death. This application has been well analogized to a suit, under the statute, instituted by the applicant to recover out of the property specified a use and enjoyment for the benefit of the wife and children, to be exempt from levy and sale during the existence of said family. It is a cause of action granted by the constitution, and which the laws frame a remedy to enforce, and for this remedy the original exclusive jurisdiction is vested in the court of ordinary. The husband, as the head of the family, may be said to have the prior right to apply; on his failure or refusal the wife may apply, if he does not object. But if the husband objects, the wife's right is denied. These several rights of the head of the family, wife, widow, guardian or trustee, are thus provided with an appropriate remedy, distinct and clearly defined so long as the applicant remains in life. On the death of such applicant, there is no special provision made by law for a representative to be made a party to conduct the suit to a final issue.

It is evident that, had the husband survived, the constitution and laws would have afforded to him, as the head of a family, a homestaed out of the property for the use

v 68—20

·of his family so long as they were under the law entitled
to the benefits thereof ; and this too would have been se-
·cured to them notwithstanding the judicial sale made of
·this property and its purchase by the respondents, since
at the time of said sale said application for homestead
·was pending, and they had notice thereof.

Shall it be said this right to secure this invaluable
boon to the family is to be defeated by reason of the un-
timely death of the head of the family ?  So far from
this event depriving the beneficiaries of this constitutional
shield and protection against creditors, it only makes it
the more to be prized and needed in the loss of their nat-
ural protector.  Toward this application the husband
was the acting trustee to secure to his family this estate
in the nature of a trust for their benefit.  Shall it fail if the
trustee dies?  We think not.  It is true there is no spe-
cial provision made by law for having either the repre-
sentative of such deceased applicant or his widow to be
made a party to such a proceeding, so as to proceed as
in ordinary suits where one of the parties dies.  But here,
under the constitution and laws, was a clear right in this
family, through the husband and father as the head, to this
estate for their use, and he was seeking to secure this
right for them at the time of his death.  Shall this trust,
inchoate and imperfect though it be, so solemnly recog-
nized, fail for the want of a trustee to represent the ben-
eficiaries, or a remedy to secure it ?  Code, section 3250,
declares for every right there shall be a remedy, and every
court having jurisdiction of the one may, if necessary,
frame the other.  In the absence of any specific remedy,
owing to the character of the estate and the relation the
parties sustain to it, and especially under the peculiar
facts of this case, where the estate sought to be set apart has
by judicial sale passed from the applicants without fault
on their part, though without affecting their rights, and
where in such case it would be eminently proper to
recover by a decree the property at the time it was as-

signed, so as to secure to complainants full and complete relief under one decree, we think it a proper case for the interposition and aid of a court of chancery.

In life, with the assent of the husband, the wife is entitled to a homestead in his estate. After death this right survives to the widow, though the title may have passed to the heirs at law.

Why should not this right remain to her in all its force, and with all its benefits, when he dies pending his application? And if there be no special provision by law for her to be heard, why may not a court of chancery afford the relief, and open its doors to her petition, and frame a remedy to meet the exigencies of her complaint? Probably, in an ordinary case, where there had been no sale or transfer of the possession of the property from the applicants, a mere petition to the court to make the widow a party plaintiff would have been sufficient to proceed-with, but under the peculiar facts of this case we think a resort to chancery is the better course to secure full and complete relief, as is sought to be done here, under one general decree to be rendered on the law and facts.

Let the judgment of the court below dismissing complainants' bill be reversed.

JACKSON, Chief Justice, concurred on special grounds, but furnished no written opinion.

CRAWFORD, Justice, concurring:

I fully concur with the majority of the court in its judgment, so far as it adjudges that the complainant here is not precluded from her right of application for homestead, and in the property specified, if as is alleged, the present holders bought under notice of the pendency of the husband's application therefor. But I cannot recognize any power in a court of chancery to entertain *original jurisdiction* in matters of setting apart a homestead. That power is lodged elsewhere, and I think, for this complai-

nant, is full and complete.   Besides, courts of chancery have been continuously enlarging their powers until, in the language of a distinguished English judge, long ago expressed, they have eaten out the very heart of the common law.   For myself, therefore, I am for limiting these powers strictly to "the correction of that wherein the law —by reason of its universality—is deficient."   Especially should this be so when it is remembered that equity originated in and continues to be nothing more nor less than bench legislation.